UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ONESIME FRANCOIS,

     Plaintiff,

v.

SCHUMACHER AUTOMOTIVE
GROUP DELRAY, LLC
d/b/a SCHUMACHER  SUBARU,

     Defendants.

_____|

## COMPLAINT

1.    Onesime Francois, ("Plaintiff"), brings this action against Schumacher Automotive

Group Delray, LLC d/b/a Schumacher Subaru, ("Defendant") alleging as follows:

## JURY DEMAND

2.    Plaintiff demands a trial by jury on all claims properly triable by a jury.

## PARTIES, VENUE AND JURISDICTION

3.    Plaintiff was at all relevant times hereto employed by Defendant.  Plaintiff is over

the age of 18 and is otherwise sui juris.

4.    Defendant is an employer within Palm Beach County, which at all relevant times

hereto violated Plaintiff's employment rights under the  Title VII of the Civil

Rights Act (Title VII) and for violation of 42 U.S.C. § 1981 ("Section 1981").

Defendant is otherwise sui juris.

5.    Venue is proper in Palm Beach County because Defendant employed Plaintiff in

the county, and because the causes of action otherwise occurred in Palm Beach County.

6.  Venue is also proper in that Plaintiff and/or Defendant ("Parties") reside in this district, in that a substantial part of the events or omissions giving rise to the claim occurred in this district and in that the Parties are subject to personal jurisdiction in this district with respect to this action, and/or there is no other district in which the action may otherwise be brought.

7.  All conditions precedent to the bringing of this action have occurred or been performed, i.e., a Charge of Discrimination was filed with the EEOC on or about February 21, 2020.  Plaintiff never received the Right to Sue Letter or case disposition from the EEOC.  On April 26, 2022, for the first time, Plaintiff's counsel received an email from the EEOC investigator showing that A Right to Sue Letter was issued by the EEOC on September 2, 2020, and a lawsuit filed before the expiration of the Right to Sue letter from the EEOC.  The Right to Sue Letter was never received by the Plaintiff nor the Plaintiff's counsel prior to the April 26, 2022 email.

8.  Jurisdiction is founded on 42 U.S.C. 2000e-5(f)(3) and 28 U.S.C. § 1331 (Federal Question).

## COUNT ONE
## DISCRIMINATION BASED ON COLOR - TITLE VII

9.  Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

10.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

11.    Plaintiff worked for Defendant for approximately five years until he was terminated on or about December 13, 2019.

12.    Plaintiff worked as a porter.

13.    Plaintiff's protected category is his color, Black.

14.    Plaintiff worked for Defendant for five years during which time Plaintiff did not receive any pay increases.  However, other porters who started employment subsequent to Plaintiff's were compensated at higher rates of pay.

15.    On at least six occasions, Plaintiff asked Defendant's Human Resources Department for a pay increase but to no avail.  Each time Plaintiff inquired as to why he was being paid less than other, less- tenured porters, the Defendant would promise to look into it but it never followed through.

16.    The last time the Plaintiff inquired about a pay increase he was terminated within two or three months following his inquiry.

17.    In addition, a few months before Plaintiff's termination, he was reprimanded for an apparent dress code violation.  Plaintiff wore a baseball cap that said "Jesus is my boss."   He was called into the Human Resources office and told to remove the hat and not to wear it to work anymore.  A few days later, however, a co-worker, who was white and Hispanic, wore the same attire that caused Plaintiff to be reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not

3

reprimanded and continued to wear the same attire without any consequences to him.

18. On December 10, 2019, at approximately 4:00 p.m., Plaintiff was in a service advisor's office and was holding his cell phone. Sara "LNU", from Defendant's Human Resources office, asked the service adviser if there was any work for Plaintiff to do. The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

19. The next day Plaintiff was fired by Sara "LNU" for using his cell phone during work.

20. Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019. He was simply holding his phone and waiting to go home. Moreover, whites and Hispanics use their personal cell phone throughout the work day, but they have not been terminated.

21. The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's harassment, discrimination, and/or termination, acting by and through its employees which caused: i) an adverse employment actions; ii) lead to a pattern, practice and/or policy of illegal employment action; iii) failure to enforce any policy against such illegal activity; iv) failure to follow Defendant's own employment policies; and/or v) Defendant took these adverse employment actions

in substantial part because of Plaintiff's protected category.

22.   Defendant did not act in good faith nor did it have an objective, reasonable ground to believe that its actions did not violate the law.

23.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered damages: loss of wages, both in the past, present, and future, as well as compensatory damages, etc.

24.   Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of the Law Offices of James Jean-Francois, P.A., to initiate this proceeding. The Plaintiff seeks recovery of reasonable and necessary attorney's fees.

25.   The Plaintiff hereby requests a jury trial.

26.   WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests judgment as follows:  that the Court accept jurisdiction over this matter; award Plaintiff for past and future loss of wages and benefits, plus interest; award Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a position comparable to the Plaintiff's former position or, in lieu of reinstatement, award front pay (including benefits); award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and grant Plaintiff such additional or alternative relief as the Court deems just and proper and/or which Plaintiff may be entitled to under the applicable laws.

## COUNT TWO
## DISCRIMINATION BASED ON RACE - TITLE VII

27.   Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

28.   At all relevant times Plaintiff was an employee of Defendant and was qualified.

29.   Plaintiff started working for Defendant approximately five years before he was

terminated on December 13, 2019.

30.   Plaintiff worked as a porter.

31.   Plaintiff's protected category is his race, Black.

32.   On at least six occasions, Plaintiff asked Defendant's Human Resources

Department for a pay increase but to no avail.

33.   Each time Plaintiff inquired as to why he was being paid less than other, less-

tenured porters, the Defendant would promise to look into it but it never followed

through.

34.   The last time the Plaintiff inquired about a pay increase he was terminated within

the following two or three months.

35.   In addition, a few months before Plaintiff's termination, he was reprimanded for

an apparent dress code violation.  Plaintiff wore a baseball cap that said "Jesus is

my boss."   He was called into the Human Resources office and told to remove the

hat and not to wear it to work anymore.  A few days later, however, a co-worker,

who was white and Hispanic, wore the same attire that caused Plaintiff to be

reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not

6

reprimanded and continued to wear the same attire without any consequences to him.

36. On December 10, 2019, at approximately 4:00 p.m., Plaintiff was in a service advisor's office and was holding his cell phone. Sara "LNU", from Defendant's HR office, asked the service adviser if there was any work for Plaintiff to do. The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

37. The next day Plaintiff was fired by Defendant's HR representative (Sara "LNU") for using his cell phone during work.

38. Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019. He was simply holding his phone and waiting to go home. Moreover, whites and Hispanics use their personal cell phone throughout the work day, but they have not been terminated.

39. The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's harassment, discrimination, and/or termination, acting by and through its employees which caused: i) an adverse employment actions; ii) lead to a pattern, practice and/or policy of illegal employment action; iii) failure to enforce any policy against such illegal activity; iv) failure to follow Defendant's own employment policies; and/or v) Defendant took these adverse employment actions

in substantial part because of Plaintiff's protected category.

40.     Defendant did not act in good faith nor did it have an objective, reasonable ground to believe that its actions did not violate the law.

41.     As a direct and proximate result of the aforementioned acts, Plaintiff has suffered damages: loss of wages, both in the past, present, and future, as well as compensatory damages, etc.

42.     Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff have necessitated Plaintiff's retaining the services of the Law Offices of James Jean-Francois, P.A., to initiate this proceeding. The Plaintiff seeks recovery of reasonable and necessary attorney's fees.

43.     The Plaintiff hereby requests a jury trial.

44.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests judgment as follows:  that the Court accept jurisdiction over this matter; award Plaintiff for past and future loss of wages and benefits, plus interest; award Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a position comparable to the Plaintiff's former position or, in lieu of reinstatement, award front pay (including benefits); award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and grant Plaintiff such additional or alternative relief as the Court deems just and proper and/or which Plaintiff may be entitled to under the applicable laws.

## COUNT THREE
## DISCRIMINATION BASED ON NATIONAL ORIGIN - TITLE VII

45.   Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

46.   At all relevant times Plaintiff was an employee of Defendant and was qualified.

47.   Plaintiff started working for Defendant five years before he was terminated on December 13, 2019.

48.   Plaintiff worked as a porter.

49.   Plaintiff's protected category is his national origin, Haitian.

51.   Plaintiff worked for Defendant for five years during which time Plaintiff did not receive any pay increases.  However, other porters who started employment subsequent to Plaintiff's were compensated at higher rates of pay.

52.   On at least six occasions, Plaintiff asked Defendant's Human Resources Department for a pay increase but to no avail.  Each time Plaintiff inquired as to why he was being paid less than other, less- tenured porters, the Defendant would promise to look into it but it never followed through.

53.   The last time the Plaintiff inquired about a pay increase he was terminated within the following two or three months.

54.   In addition, a few months before Plaintiff's termination, he was reprimanded for an apparent dress code violation.  Plaintiff wore a baseball cap that said "Jesus is my boss."   He was called into the Human Resources office and told to remove the hat and not to wear it to work anymore.  A few days later, however, a co-worker,

who was white and Hispanic, wore the same attire that caused Plaintiff to be reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not reprimanded and continued to wear the same attire without any consequences to him.

55.   On December 10, 2019, at approximately 4:00 pm, Plaintiff was in a service advisor's office and was holding his cell phone.  Sara "LNU", from Defendant's HR office, asked the service adviser if there was any work for Plaintiff to do.  The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

56.   The next day Plaintiff was fired by Defendant's HR representative (Sara "LNU") for using his cell phone during work.

57.   Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019.   He was simply holding his phone and waiting to go home.  Moreover, whites and Hispanics use their personal cell phone throughout the work day, but they have not been terminated.

58.   The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's harassment, discrimination, and/or termination, acting by and through its employees which caused:  i) an adverse employment actions;  ii) lead to a pattern, practice and/or policy of illegal employment action; iii) failure to enforce any

10

policy against such illegal activity;  iv) failure to follow Defendant's own employment policies; and/or v) Defendant took these adverse employment actions in substantial part because of Plaintiff's protected category.

59.   Defendant did not act in good faith nor did it have an objective, reasonable ground to believe that its actions did not violate the law.

60.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered damages: loss of wages, both in the past, present, and future, as well as compensatory damages, etc.

61.   Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of the Law Offices of James Jean-Francois, P.A., Duty Free Americas, Suite 211, Hollywood, FL 33024, to initiate this proceeding. The Plaintiff seeks recovery of reasonable and necessary attorney's fees.

62.   The Plaintiff hereby requests a jury trial.

63.   WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests judgment as follows:  that the court accept jurisdiction over this matter; award Plaintiff for past and future loss of wages and benefits, plus interest; award Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a position comparable to the Plaintiff's former position or, in lieu of reinstatement, award front pay (including benefits); award to Plaintiff all costs and reasonable

attorneys' fees incurred in connection with this action; and grant Plaintiff such additional or alternative relief as the Court deems just and proper and/or which Plaintiff may be entitled to under the applicable laws.

**COUNT FOUR**
**DISCRIMINATION BASED ON COLOR - SECTION 1981**

64.     Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

65.     At all relevant times Plaintiff was an employee of Defendant and was qualified.

66.     Plaintiff started working for Defendant five years before he was terminated on December 13, 2019.

67.     Plaintiff worked as a porter.

68.     Plaintiff's protected category is his color, Black.

69.     Plaintiff worked for Defendant for five years during which time Plaintiff did not receive any pay increases.  However, other porters who started employment subsequent to Plaintiff's were compensated at higher rates.

70.     On at least six occasions, Plaintiff asked Defendant's Human Resources Department for a pay increase but to no avail.  Each time Plaintiff inquired as to why he was being paid less than other, less- tenured porters, the Defendant would promise to look into it but it never followed through.

71.     The last time the Plaintiff inquired about a pay increase he was terminated within the following two or three months.

72.     In addition, a few months before Plaintiff's termination, he was reprimanded for

an apparent dress code violation.  Plaintiff wore a baseball cap that said "Jesus is my boss."   He was called into the Human Resources office and told to remove the hat and not to wear it to work anymore.  A few days later, however, a co-worker, who was white and Hispanic, wore the same attire that caused Plaintiff to be reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not reprimanded and continued to wear the same attire without any consequences to him.

73.   On December 10, 2019, at approximately 4:00 p.m., Plaintiff was in a service advisor's office and was holding his cell phone.  Sara "LNU", from Defendant's HR office, asked the service adviser if there was any work for Plaintiff to do.  The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

74.   The next day Plaintiff was fired by Defendant's HR representative (Sara "LNU") for using his cell phone during work.

75.   Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019.  He was simply holding his phone and waiting to go home.  Moreover, whites and Hispanics use their personal cell phone throughout the work day, but they have not been terminated.

76.   The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's

harassment, discrimination, and/or termination, acting by and through its

employees which caused: i) an adverse employment actions; ii) lead to a pattern,

practice and/or policy of illegal employment action; iii) failure to enforce any

policy against such illegal activity; iv) failure to follow Defendant's own

employment policies; and/or v) Defendant took these adverse employment actions

in substantial part because of Plaintiff's protected category.

77. Defendant did not act in good faith nor did it have an objective, reasonable ground

to believe that its actions did not violate the law.

78. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered

damages: wages, both in the past, present, and future, as well as compensatory

damages, etc.

79. Defendant's actions and conduct as described herein and the resulting damage and

loss to Plaintiff has necessitated Plaintiff's retaining the services of the Law

Offices of James Jean-Francois, P.A., Duty Free Americas, Suite 211, Hollywood,

FL 33024, to initiate this proceeding. The Plaintiff seeks recovery of reasonable

and necessary attorney's fees.

80. The Plaintiff hereby requests a jury trial.

81. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests

judgment as follows: that the court accept jurisdiction over this matter; award

Plaintiff for past and future loss of wages and benefits, plus interest; award

Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a position comparable to the Plaintiff's former position or, in lieu of reinstatement, award front pay (including benefits); award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and grant Plaintiff such additional or alternative relief as the Court deems just and proper and/or which Plaintiff may be entitled to under the applicable laws.

**COUNT FIVE**
**DISCRIMINATION BASED ON RACE - SECTION 1981**

82. Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

83. At all relevant times Plaintiff was an employee of Defendant and was qualified.

84. Plaintiff started working for Defendant five years before he was terminated on December 13, 2019.

85. Plaintiff worked as a porter.

86. Plaintiff's protected category is his race, Black.

87. Plaintiff worked for Defendant for five years during which time Plaintiff did not receive any pay increases.  However, other porters who started employment subsequent to Plaintiff's were compensated at higher rates.

88. On at least six occasions, Plaintiff asked Defendant's Human Resources Department for a pay increase but to no avail.  Each time Plaintiff inquired as to why he was being paid less than other, less- tenured porters, the Defendant would promise to look into it but it never followed through.

89.    The last time the Plaintiff inquired about a pay increase he was terminated within the following two or three months.

90.    In addition, a few months before Plaintiff's termination, he was reprimanded for an apparent dress code violation.  Plaintiff wore a baseball cap that said "Jesus is my boss."   He was called into the Human Resources office and told to remove the hat and not to wear it to work anymore.  A few days later, however, a co-worker, who was white and Hispanic, wore the same attire that caused Plaintiff to be reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not reprimanded and continued to wear the same attire without any consequences to him.

91.    On December 10, 2019, at approximately 4:00 p.m., Plaintiff was in a service advisor's office and was holding his cell phone.  Sara "LNU", from Defendant's HR office, asked the service adviser if there was any work for Plaintiff to do.  The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

92.    The next day Plaintiff was fired by Defendant's HR representative (Sara "LNU") for using his cell phone during work.

93.    Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019.  He was simply holding his phone and waiting to go home.  Moreover, whites and Hispanics use their personal cell phone throughout

the work day, but they have not been terminated.

94.  The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's harassment, discrimination, and/or termination, acting by and through its employees which caused:  i) an adverse employment actions;  ii) lead to a pattern, practice and/or policy of illegal employment action; iii) failure to enforce any policy against such illegal activity;  iv) failure to follow Defendant's own employment policies; and/or v) Defendant took these adverse employment actions in substantial part because of Plaintiff's protected category.

95.  Defendant did not act in good faith nor did it have an objective, reasonable ground to believe that its actions did not violate the law.

96.  As a direct and proximate result of the aforementioned acts, Plaintiff has suffered damages:  wages, both in the past, present, and future, as well as compensatory damages, etc.

97.  Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of the Law Offices of James Jean-Francois, P.A., Duty Free Americas, Suite 211, Hollywood, FL 33024, to initiate this proceeding. The Plaintiff seeks recovery of reasonable and necessary attorney's fees.

98.  The Plaintiff hereby requests a jury trial.

17

99.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests

judgment as follows:  that the court accept jurisdiction over this matter; award

Plaintiff for past and future loss of wages and benefits, plus interest; award

Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a

position comparable to the Plaintiff's former position or, in lieu of reinstatement,

award front pay (including benefits); award to Plaintiff all costs and reasonable

attorneys' fees incurred in connection with this action; and grant Plaintiff such

additional or alternative relief as the Court deems just and proper and/or which

Plaintiff may be entitled to under the applicable laws.

**COUNT SIX**
**DISCRIMINATION DUE TO NATIONAL ORIGIN - SECTION 1981**

100.    Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

101.    At all relevant times Plaintiff was an employee of Defendant and was qualified.

102.    Plaintiff started working for Defendant five years before he was terminated on

December 13, 2019.

103.    Plaintiff worked as a porter.

104.    Plaintiff's protected category is his National Origin, Haitian.

105.    Plaintiff worked for Defendant for five years during which time Plaintiff did not

receive any pay increases.  However, other porters who started employment

subsequent to Plaintiff's were compensated at higher rates.

106.    On at least six occasions, Plaintiff asked Defendant's Human Resources

Department for a pay increase but to no avail.  Each time Plaintiff inquired as to why he was being paid less than other, less- tenured porters, the Defendant would promise to look into it but it never followed through.

107.   The last time the Plaintiff inquired about a pay increase he was terminated within the following two or three months.

108.   In addition, a few months before Plaintiff's termination, he was reprimanded for an apparent dress code violation.  However, a co-worker, who was white and Hispanic, wore the same attire that caused Plaintiff to be reprimanded.  Unlike the Plaintiff, this white, Hispanic employee was not reprimanded and continued to wear the same attire without any consequences to him.

109.   On December 10, 2019, at approximately 4:00 pm, Plaintiff was in a service advisor's office and was holding his cell phone.  Sara "LNU", from Defendant's HR office, asked the service adviser if there was any work for Plaintiff to do.  The service adviser explained that there was none and it was almost time for Plaintiff to go home since it was the end of the work day.

110.   The next day Plaintiff was fired by Defendant's HR representative (Sara "LNU") for using his cell phone during work.

111.   Defendant's reason for termination is pretextual, as Plaintiff was not using his cell phone on December 10, 2019.  He was simply holding his phone and waiting to go home.  Moreover, whites and Hispanics use their personal cell phone throughout

the work day, but they have not been terminated.

112.    The causal link between Plaintiff's protected category and Defendant's adverse actions, differential treatment, and/or pattern and practice, caused Defendant's harassment, discrimination, and/or termination, acting by and through its employees which caused:  i) an adverse employment actions;  ii) lead to a pattern, practice and/or policy of illegal employment action; iii) failure to enforce any policy against such illegal activity;  iv) failure to follow Defendant's own employment policies; and/or v) Defendant took these adverse employment actions in substantial part because of Plaintiff's protected category.

113.    Defendant did not act in good faith nor did it have an objective, reasonable ground to believe that its actions did not violate the law.

114.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered damages: loss of wages, both in the past, present, and future, as well as compensatory damages, etc.

115.    Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of the Law Offices of James Jean-Francois, P.A., Duty Free Americas, Suite 211, Hollywood, FL 33024, to initiate this proceeding. The Plaintiff seeks recovery of reasonable and necessary attorney's fees.

116.    The Plaintiff hereby requests a jury trial.

117.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests
judgment as follows:  that the court accept jurisdiction over this matter; award
Plaintiff for past and future loss of wages and benefits, plus interest; award
Plaintiff compensatory damages; order Defendant to reinstate the Plaintiff to a
position comparable to the Plaintiff's former position or, in lieu of reinstatement,
award front pay (including benefits); award to Plaintiff all costs and reasonable
attorneys' fees incurred in connection with this action; and grant Plaintiff such
additional or alternative relief as the Court deems just and proper and/or which
Plaintiff may be entitled to under the applicable laws.

## COUNT SEVEN
## RETALIATION

118.    Plaintiff repeats and realleges paragraphs 1 through 8, as if fully set forth herein.

119.    This is an action for retaliatory conduct under Title VII.

120.    Defendant retaliated against Plaintiff because Plaintiff complained about the fact that
during his entire term of employment, he was not given any pay increases and was
actually compensated at a lesser rate than others who did the same work and had
less seniority than Plaintiff.

121.    Defendant also retaliated against Plaintiff by terminating him for using his cell
phone during work on December 10, 2019, although Plaintiff was not using his
cell phone but was simply holding it as it was nearing the end of his work shift and
he was about to go home.  However, whites and Hispanics employed by Defendant

used their personal cell phone throughout the work day, but they were not terminated.

122. Defendant retaliated against Plaintiff for exercising his rights afforded him under Title VII.

123. Defendant violated Plaintiff's privilege of employment in violation of Title VII.

124. As a result of Defendant's violation of Title VII, Plaintiff has been damaged.

125. The Plaintiff hereby requests a jury trial.

126. WHEREFORE, Plaintiff, ONESIME FRANCOIS, prays that this Court:

    a.    Advance this case on the docket;

    b.    Assign this case for hearing at the earliest practicable date and cause this case to be in every way expedited pursuant to 42 U.S.C. § 2000e-5(f)(5);

    c.    Issue a declaratory judgment that Defendant's practices toward Plaintiff violated her rights under Title VII;

    d.    Enjoin Defendant, its administrators, directors and supervisors from continuing or maintaining the policy, practice, or custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of their national origin, which rights are secured by Title VII.

    e.    Order Defendant to remedy the National Origin discrimination against Plaintiff by:

        1.    Paying appropriate back pay;

        2.    Paying prejudgment interest; and

3.      Providing any other relief that this Court deems appropriate.

f.      Enter a judgment against Defendant for compensatory damages;

g.      Enter a judgment against Defendant for punitive damages; and

h.      Enter a judgment against Defendant for costs and a reasonable award of

attorneys' fees pursuant to Title VII.

Respectfully submitted on this 10<u>th</u> day of June, 2022.

**LAW OFFICES OF JAMES JEAN-FRANCOIS, P.A.**
6100 Hollywood Boulevard, Ste. 211
Hollywood, FL   33024
Telephone: (954)987-8832
Telecopier: (954)987-2622
e-mail:        *jamesjeanfrancoisesq@hotmail.com* *(Primary)*
               *jjonlaw@hotmail.com* (Secondary)

        */s/ James Jean-Francois*
By:_____
        **JAMES JEAN-FRANCOIS, ESQ.**
        Fla. Bar No.: 0495115
        Attorney for Plaintiff